1

2

3

4

5

6

7

8                            UNITED STATES DISTRICT COURT

9                            CENTRAL DISTRICT OF CALIFORNIA

10   SHAD P. BOYD,                      )   Case No. ED CV 11-493-PJW
                                        )
11                 Plaintiff,           )
                                        )
12          v.                          )   MEMORANDUM OPINION AND ORDER
                                        )
13   MICHAEL J. ASTRUE,                 )
     COMMISSIONER OF THE                )
14   SOCIAL SECURITY ADMINISTRATION,    )
                                        )
15                 Defendant.           )
     _____)

16

17                          I.   INTRODUCTION

18       Plaintiff Shad Boyd appeals a decision by Defendant Social

19   Security Administration ("the Agency"), denying his application for

20   Disability Insurance benefits ("DIB").  He claims that the

21   Administrative Law Judge ("ALJ") erred when he failed to: (1) comply

22   with the Appeals Council's remand orders; and (2) properly consider

23   the workers' compensation findings.  (Joint Stip. at 3.)  For the

24   reasons explained below, the appeal is denied and the action is

25   dismissed with prejudice.

26                       II.  SUMMARY OF PROCEEDINGS

27       In September 2005, Plaintiff applied for DIB, alleging that he

28   had been disabled since February 2004, due to degenerative disc

1  disease and loss of a finger.  (Administrative Record ("AR") 336-38,
2  356, 363-65.)  The Agency denied the application initially and on
3  reconsideration.  Plaintiff then requested and was granted a hearing
4  before an ALJ.  In January 2009, he appeared with counsel at the
5  hearing.  (AR 24-62.)  In March 2009, the ALJ held a supplemental
6  hearing.  (AR 63-124.)  In June 2009, the ALJ issued a decision,
7  finding that Plaintiff was disabled as of May 16, 2006, but not before
8  then.[1]  (AR 201-11.)

9       Plaintiff appealed to the Appeals Council, which remanded the
10 case to the ALJ for further proceedings.  (AR 311-13.)  The ALJ then
11 held another hearing on March 22, 2010, and, on May 4, 2010, issued a
12 second decision, again concluding that Plaintiff was not disabled
13 prior to May 16, 2006.  (AR 11-19, 125-91.)  Plaintiff appealed to the
14 Appeals Council, which denied review.  (AR 1-3.)  He then commenced
15 the instant action.

16                         III.   ANALYSIS
17 A.   The ALJ's Failure to Adhere to the Appeal's Council's Remand
18      Order
19       Following the ALJ's initial decision, Plaintiff appealed to the
20 Appeals Council, arguing that the ALJ had erred.  The Appeals Council
21 agreed and sent the case back to the ALJ with instructions to, among
22 other things, reconsider the credibility finding and re-evaluate
23 Plaintiff's neck and back ailments.  (AR 311-13.)  Plaintiff complains
24 that the ALJ failed to follow the Appeals Council's remand order and

25

26 _____

      [1]  Plaintiff's insurance expired on December 31, 2004.  (AR 349.)
27 In order to qualify for benefits, he was required to establish that he
   was disabled prior to that date.  *Tidwell v. Apfel*, 161 F.3d 599, 601
28 (9th Cir. 1989).

                                  2

1   argues that, as a result, the ALJ's decision should be reversed.   For
2   the following reasons, this argument is rejected.

3        The Court has a limited role in reviewing Agency decisions.   It
4   is tasked with determining whether the Agency's final decision is
5   supported by substantial evidence and is not based on legal error.
6   *See* 42 U.S.C. § 405(g); *Tyler v. Astrue*, 305 F. App'x 331, 332 (9th
7   Cir. 2008); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).
8   In *Tyler*, the Ninth Circuit explained in an unpublished decision
9   closely on point:

10       The district court properly declined to evaluate whether the
11       ALJ's second decision satisfied the demands of the Appeals
12       Council's remand . . . .   [F]ederal courts only have
13       jurisdiction to review the final decisions of administrative
14       agencies.   When the Appeals Council denied review of the
15       ALJ's second decision, it made that decision final, and
16       declined to find that the ALJ had not complied with its
17       remand instructions.

18   *Id.* at 332.

19       Thus, the issue of whether the ALJ followed the Appeals Council's
20   remand order is not properly before the Court.   As such, Plaintiff's
21   claim here is rejected.

22       Plaintiff argues that the ALJ failed to properly evaluate
23   Plaintiff's credibility and failed to make specific findings regarding
24   credibility.   (Joint Stip. at 4-8.)   The record does not support this
25   claim.

26       In his decision following remand, the ALJ incorporated his
27   earlier decision and supplemented it with additional findings.   (AR
28   12.)   In the earlier decision, the ALJ found that Plaintiff's ability

                                        3

to perform daily activities, like taking care of his children, driving a car, changing his 25-pound one-year-old, washing dishes, doing laundry, and taking out the trash, was inconsistent with his claim that he was severely limited by pain. (AR 208.)  In addition, the ALJ noted that some of the doctors who examined Plaintiff questioned his sincerity and suggested that he might be exaggerating his claims. (AR 208.)  In the second decision, the ALJ added to this the medical expert's observations from the administrative hearing following remand that Plaintiff's complaints were disproportionate to the clinical findings. (AR 16.)

These were legitimate reasons for questioning Plaintiff's testimony. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (upholding ALJ's finding that Plaintiff was not credible based in part on his ability to perform daily activities, including caring for his ailing sister); *Thomas v. Barnhart*, 278 F.3d 947, 959-60 (9th Cir. 2002) (affirming ALJ's credibility finding based in part on fact that claimant exaggerated her condition).  And they are supported by the record. (AR 163-66, 432, 455.)  Thus, the ALJ's finding that Plaintiff's testimony regarding his pain prior to May 2006 was not credible will not be disturbed.

Plaintiff also takes exception to the ALJ's findings regarding his neck and back disorders. (Joint Stip. at 15-17.)  Here, again, the Court finds that the ALJ provided sufficient support for his findings.  In his 2009 decision, the ALJ pointed out that the agreed medical examiner in his workers' compensation case determined on September 30, 2004--three months before Plaintiff's insurance expired--that Plaintiff was capable of performing light work, despite his pain. (AR 206.)  The ALJ emphasized that Plaintiff was able to

4

1 perform numerous daily activities that were inconsistent with
2 incapacitating pain. (AR 208.) The ALJ also noted that some of the
3 doctors who examined Plaintiff questioned his sincerity. (AR 208.)

4      Following remand, the ALJ added to this evidence the testimony of
5 medical expert Arthur Lorber, a board certified orthopedic surgeon.
6 (AR 135-74.) According to Dr. Lorber, Plaintiff's degenerative disc
7 disease and neck pain did not preclude him from performing light work
8 in December 2004. (AR 141-43.) This evidence, taken as a whole, is
9 sufficient to support the ALJ's finding that Plaintiff was not
10 disabled prior to his date last insured.

11 B.   Dr. Feiwell's Findings

12      In January 2002, Plaintiff injured his back driving a bus when he
13 drove over a dip in the street and banged down hard on his seat. (AR
14 591.) He was able to continue working that day but later began
15 experiencing pain. (AR 591.) A week later, he was placed on light
16 duty for about two months and, in April 2002, he returned to work
17 without restrictions. (AR 591.)

18      Plaintiff, however, continued experiencing pain and, in September
19 2002, was referred to Dr. John Sasaki, a pain management specialist.
20 (AR 591.) Thereafter, Dr. Sasaki became Plaintiff's treating
21 physician. Dr. Sasaki prescribed epidural injections, Motrin, and
22 physical therapy. (AR 593.) He authorized Plaintiff to continue
23 working full time without restriction until May 2003, when Plaintiff
24 reported that he was experiencing persistent, increased pain in his
25 neck and back. (AR 593-95.) Plaintiff was treated with an epidural
26 and physical therapy. (AR 596.) He was placed on medical leave for
27 three days as a result. (AR 595.) In August 2003, he was excused

28

from work for three more days and in October 2003 for two more.  (AR 596.)

In October 2003, Plaintiff re-injured his back when he drove his bus into a curb.  (AR 597.)  He was seen by Dr. Sasaki in November 2003, 18 days after the accident.  (AR 597.)  Dr. Sasaki did not place Plaintiff on medical leave and treated him with epidural injections and nerve blocks.  (AR 597.)  Plaintiff returned to Dr. Sasaki in February 2004 and reported "near complete relief" from his pain following the epidurals and nerve blocks.  (AR 598.)

In March 2004, Plaintiff returned to Dr. Sasaki, complaining that he had recently suffered another injury when he banged down hard on his seat again while driving his bus.  (AR 584.)  Dr. Sasaki concluded that Plaintiff was temporarily totally disabled until April 1, 2004. (AR 584.)  Plaintiff was treated with epidural injections, medication, and physical therapy.  (AR 585.)  In subsequent visits through October 2005, Dr. Sasaki noted that Plaintiff was either "off work" or temporarily totally disabled.  (AR 584-89.)

Plaintiff argues that the ALJ, the vocational expert, and the medical expert misunderstood Dr. Sasaki's use of the term "temporarily totally disabled" in the context of the workers' compensation case. (Joint Stip. at 22-24.)  He contends that they interpreted this term to mean that Plaintiff was unable to perform his job as a bus driver but could perform other work.  (Joint Stip. at 23.)  He argues that the term actually means that he was incapable of performing any work. (Joint Stip. at 23.)  According to Plaintiff, this misunderstanding tainted the ALJ's decision.  This argument is rejected.

State workers' compensation findings are not binding on the Agency in disability cases. *Macri v. Chater*, 93 F.3d 540, 543-44 (9th

6

Cir. 1996); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988).  Nor are workers' compensation doctors' conclusions regarding the ultimate issue of disability. *Tomasetti*, 533 F.3d at 1041.  Assuming without deciding that the ALJ, the vocational expert, and the medical expert misunderstood the meaning of temporarily totally disabled, any error does not warrant reversal. Dr. Sasaki's conclusion that Plaintiff was disabled in workers' compensation terms, i.e., he was unable to perform any work, was not binding on the ALJ and, therefore, the ALJ's error in misunderstanding that term does not warrant reversal.[2]

In September 2004, Plaintiff was examined by doctor Earl Feiwell, the "agreed medical examiner" in Plaintiff's workers' compensation case.  (AR 441-58.)  Dr. Feiwell determined that Plaintiff would experience slight to moderate pain with activity, increasing to moderate pain with prolonged standing, walking, bending, and lifting, and lead to severe pain with heavier activity.  (AR 456.)  Plaintiff

---

[2]  This is not to say that the ALJ's treatment of Dr. Sasaki's opinion was flawless.  The fact that Dr. Sasaki couched his opinion in workers' compensation terms and offered an opinion on the ultimate issue of disability does not mean that his entire opinion should have been disregarded. *Orn v. Astrue*, 495 F.3d 625, 631-33 (9th Cir. 2007) (explaining, even if treating doctor's opinion is not entitled to controlling weight, it must still be considered by ALJ).  As the treating physician, Dr. Sasaki was entitled to deference, all things being equal. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). In order to discount Dr. Sasaki's opinion, the ALJ was required to provide specific and legitimate reasons supported by substantial evidence in the record for doing so. *Id.*  It does not appear that he did that here.  In his 2009 decision, instead of explaining why he was rejecting Dr. Sasaki's opinion, he cryptically explained that he was accepting Dr. Feiwell's opinion because it was "reasonable." (AR 207.)  The ALJ did not mention Dr. Sasaki in the 2010 decision. Despite these apparent problems with the ALJ's decision, the Court is not inclined to address this issue further because it was not raised by Plaintiff and was not briefed by the parties.

7

argues that the ALJ erred in analyzing Dr. Feiwell's findings. (Joint Stip. at 19-21.)  He points out that, in workers' compensation terms, moderate pain would cause a marked limitation in activity and severe pain would preclude it.  (Joint Stip. at 20.)  In Plaintiff's view, this means that Dr. Feiwell found that Plaintiff was incapable of working in 2004.  The record does not support Plaintiff's argument.

In his 2009 decision, the ALJ discussed Dr. Feiwell's findings in detail.  (AR 206-07.)  Importantly, as the ALJ pointed out, Dr. Feiwell determined in September 2004 that, despite his back and neck ailments and the pain that they caused, Plaintiff had the residual functional capacity to perform light work.  (AR 206, 456.)  In his 2009 decision, the ALJ found that Plaintiff could perform sedentary work prior to May 2006, which is obviously more restrictive than Dr. Feiwell's finding that he could perform light work.  (AR 204-08.)  In his 2010 decision, the ALJ incorporated the 2009 decision and, after discussing additional evidence he considered, including Dr. Lorber's testimony, he concluded that, prior to May 2006, Plaintiff was capable of performing light work.  (AR 15-16.)

The fact that the ALJ did not analyze the workers' compensation terms used by Dr. Feiwell and discuss how they corresponded to social security terms was not error.  Clearly, Dr. Feiwell believed that Plaintiff was capable of performing light work in September 2004-- three months before Plaintiff's insurance ran out--regardless of any limitations due to pain.  As such, the ALJ's finding that Plaintiff could work was in line with Dr. Feiwell's findings and will not be disturbed.

IV.   CONCLUSION

For these reasons, the Court concludes that the Agency's decision denying benefits is affirmed and the action is dismissed with prejudice.

IT IS SO ORDERED.

Dated: September 27, 2012.

_____
PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Soc Sec\BOYD, 493\memo opinion and order.wpd

9